## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LILIAN HANSFORD,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BANK OF AMERICA, ET AL.,** | : | |
| **Defendants** | : | **NO. 07-4716** |

## MEMORANDUM AND ORDER

PRATTER, J.                                                      AUGUST 22, 2008

In her First Amended Complaint, Plaintiff Lilian Hansford has sued Bank of America (successor in interest to Fleet National Bank), Mortgage Electronic Registration System ("MERS"), PHH Mortgage Corporation (doing business as PHH Mortgage Services) and John Does Nos. 1-10 pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, the Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. C.S. §§ 2270.1, *et seq.*, the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1, *et seq.*, and 42 U.S.C. § 1983 for damages arising out of alleged unlawful conduct by the Defendants relating to Ms. Hansford's mortgage.  Ms. Hansford has also sued the Defendants for fraud, breach of contract, negligence, breach of fiduciary duty, conspiracy and aiding and abetting, abuse of process, wrongful use of process, fraud on the court, and punitive damages.

The Defendants move to dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that any claims relating to the mortgage foreclosure are barred by the Rooker-Feldman doctrine and/or judicial estoppel, and the remaining claims fail to state a claim upon which relief can be granted and/or are time-barred. Ms. Hansford has voluntarily withdrawn any claim for rescission of the mortgage, the Fair Credit

Extension Uniformity Act claim (Count IV), and the separate claim for punitive damages (Count XIII), but otherwise opposes the Motion.

For the reasons discussed below, the Court will grant the Motion as to the following claims: Fair Credit Reporting Act (Count I); breach of contract (Count III); negligence (Count VI); breach of fiduciary duty (Count VII); abuse of process (Count IX); wrongful use of process (Count X); fraud on the court (Count XI); and Section 1983 (Count XII). These claims will be dismissed. The Motion will be denied, however, as to the fraud, UPTCPL, conspiracy and aiding and abetting claims.

**FACTUAL BACKGROUND**

For the purposes of a motion to dismiss, the facts alleged in the First Amended Complaint are deemed to be true. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The facts alleged here are as follows.

Ms. Hansford executed a mortgage and note in June 2003. (Amd. Compl. ¶ 13.) At some point in 2005, Ms. Hansford fell behind on her mortgage payments allegedly due to medical complications and hospitalization. (Id. at ¶ 15.) On April 26, 2005, Ms. Hansford was admitted to the hospital for a kidney transplant, which took place on April 27, 2005. (Id. at ¶ 16.) Ms. Hansford remained in the hospital for approximately one month following the surgery. (Id. at 17.) In May 2005, prior to her release from the hospital, Ms. Hansford contacted the Defendants to make arrangements to cure her arrearage. (Id. at ¶ 18.)

The Defendants informed Ms. Hansford to "call when she was released from the hospital and that her arrearage would be 'placed on the back end of her mortgage' and that her monthly payments would remain the same." (Id. at ¶ 19.) When Ms. Hansford was released from the

2

hospital, she was told that the agreement that was reached while she was hospitalized would be honored.  (Id. at ¶ 20.)  In August 2005, Ms. Hansford was "transferred to a new representative" and subsequently informed that the original offer to put the arrearage on the back end of her mortgage was no longer available.  (Id. at ¶ 21.)  "The Defendants" then orally agreed to several different repayment plans, but allegedly reneged on each of them.  (See id. ¶¶ 22-29.)

Around October 11, 2005, MERS instituted an Action in Mortgage Foreclosure arising from Ms. Hansford's purported default on the mortgage.  (Id. at ¶ 14.)  Despite Ms. Hansford's timely payments under the orally negotiated repayment plans, in June 2006, Ms. Hansford received notice of a sheriff's sale of her house.  (Id. at ¶ 30.)  The Defendants advised Ms. Hansford to "ignore the notice" and that "the Sheriff's Sale would not happen."  (Id. at ¶ 31.)  Ms. Hansford continued to make timely payments, but despite the Defendants' representations to the contrary, in October 2006, Ms. Hansford received notice from the Sheriff's Department that the foreclosure had not been stayed.  (Id. at ¶¶ 32-33.)  The Defendants allegedly later informed Ms. Hansford that they were "just waiting for her to miss a payment rather than filing new paperwork."  (Id. at ¶ 34.)  In an attempt to save her home from the sherrif's sale, Ms. Hansford filed a Chapter 13 bankruptcy voluntary petition on October 19, 2006.  (Id. at ¶ 35.)

Ms. Hansford seeks rescission of the loan, including a declaration that she is not liable for any finance charges or other charges; termination of any security interest in Ms. Hansford's property that may have been created under the loan; return of any money or property that Ms. Hansford has paid in connection with the transaction; statutory damages; forfeiture and return of loan proceeds; and punitive damages.

**STANDARD OF REVIEW**

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint.  Conley, 355 U.S. at 45-46.  Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," Conley, 355 U.S. at 47.  While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-1965 (2007) (citations omitted).  Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ."  Id. at 1965 (citations omitted).

In making such a determination, the Court "must only consider those facts alleged in the complaint and accept all of those allegations as true."  ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984)); see also Bell Atlantic, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)").  The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party.  Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989).  The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences."  Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183-84 (3d Cir. 2000) (citing City of Pittsburg v. West Penn Power Co., 147 F.3d 256, 263 n.13 (3d Cir. 1998)).

**DISCUSSION**

The Defendants assert four independent grounds for dismissal of the Complaint: (1)

4

application of the <u>Rooker-Feldman</u> doctrine, which bars re-litigation of a state court judgment in federal court; (2) operation of claim preclusion, which bars Ms. Hansford's claims because they could have been raised in the bankruptcy proceedings; (3) judicial estoppel due to Ms. Hansford's failure to disclose the present claims in her bankruptcy proceedings; and (4) failure to state a claim and/or statute of limitations.

**I.     Lack of Jurisdiction Pursuant to the <u>Rooker-Feldman</u> Doctrine**

<u>Rooker-Feldman</u> provides that federal courts other than the United States Supreme Court lack subject matter jurisdiction to review and reverse judgments rendered by state courts.  <u>In re Randall</u>, 358 B.R. 145, 153 (Bkrtcy. E.D. Pa. 2006) (<u>citing</u> <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923); <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983)); <u>see also</u> 28 U.S.C. § 1257 (conferring certiorari power solely upon the United States Supreme Court).  Although Section 1257 refers to orders and decrees of the highest state court, the <u>Rooker-Feldman</u> doctrine has been applied to final decisions of lower state courts.  <u>In re Knapper</u>, 407 F.3d 573, 580 (3d Cir. 2005).  The limitation is jurisdictional and, therefore, cannot be waived and may be raised *sua sponte* by the Court at any point in the proceedings.[1] <u>Randall</u>, 358 B.R. at 154 n.4.

The doctrine is limited to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  <u>Exxon Mobil Corporation v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005).  Where "a federal plaintiff present[s] some

---

[1] "Because the <u>Rooker-Feldman</u> doctrine is jurisdictional in nature, its applicability must be determined before considering the defendants' arguments regarding the applicability of res judicata."  <u>Randall</u>, 358 B.R. at 158 n.8 (citation omitted).

independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party . . ., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." Id. Thus, Rooker-Feldman is not implicated simply because a party brings to federal court a matter it previously litigated in state court. See Parkview Assoc. Partnership v. City of Lebanon, 225 F.3d 321, 329 (3d Cir. 2000) (asserting that Rooker-Feldman is not a jurisdictional version of preclusion). Although recent Supreme Court decisions have curtailed the doctrine's application, it nonetheless remains viable. See Lance v. Dennis, 546 U.S. 459, 464 (2006).

In the Third Circuit, the Rooker-Feldman doctrine "prohibits District Courts from adjudicating actions in which the relief requested requires determining whether the state court's decision is wrong or voiding the state court's ruling." Id. Thus, a claim is barred by Rooker-Feldman under two circumstances: (1) if the federal claim was actually litigated in state court prior to the filing of the federal action, or (2) if the federal claim is inextricably intertwined with state adjudication such that federal relief can only be predicated upon a conclusion that the state court was wrong. Id. In either case, Rooker-Feldman bars a litigant's federal claims and divests the district court of subject matter jurisdiction over those claims. Id. With regard to the "inextricably intertwined" prong, courts in the Third Circuit have reaffirmed its continuing validity in a number of post-Exxon decisions. See Gary v. Braddock Cemetery, Nos. 06-3469, 06-3617 and 06-3680, – F.3d –, 2008 WL 343320, at *8 n.5 (3d Cir. Feb. 5, 2008); Knapper, 407 F.3d at 580; In re Stuart, 367 B.R. 541, 549-50 (Bankr. E.D. Pa. 2007); In re Cooley, 365 B.R. 464, 470-73 (Bankr. E.D. Pa. 2007).

Here, the applicable state court judgment at issue is the foreclosure determination.

6

Because none of Ms. Hansford's claims were "actually litigated" in that proceeding, the Rooker-Feldman doctrine would only apply to those claims, if any, that are "inextricably intertwined" with the state court judgment.  A federal claim is inextricably intertwined with a prior state court judgment when "(1) the federal court must determine that the state court judgment was erroneously entered in order to grant the requested relief, or (2) the federal court must take an action that would negate the state court's judgment . . . . In other words, Rooker-Feldman does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders."  Knapper, 407 F.3d 580 (quoting Walker v. Horn 385 F.3d 321, 329 (3d Cir. 2004)).  Thus, an "inextricably intertwined" claim "would not be one asserted or decided in state court but whose upholding in federal court would effectively undo the state court's judicial judgment."  Randall, 358 B.R. at 155 (citing 18 Moore's Federal Practice § 133.30[3][c] at 133-30.9 (3d ed. 2006)).

Ms. Hansford's claims for damages fall outside the scope of the Rooker-Feldman doctrine because relief in the form of damages arising from conduct by adverse parties does not in any way reverse the state court foreclosure judgment.  The amount due a mortgagee can be adjusted without affecting the validity of the mortgage itself or the right of the mortgagee to foreclose upon its judgment.  The majority of the claims for damages presented here are not based on the state court foreclosure judgment; rather, they are based on the Defendants' alleged conduct. Indeed, most of the conduct of which Ms. Hansford complains appears to predate the foreclosure judgment.  See Turner v. Crawford Square Apartments, 449 F.3d 542 (3d Cir. 2006) (holding that a state court judgment in eviction against a tenant did not jurisdictionally bar a federal district court from later hearing the tenant's Fair Housing Act claims against the landlord);

Randall, 358 B.R. at 161-62 (holding UTPCPL damage and recoupment claims *not* inextricably intertwined with state court foreclosure judgment).

Moreover, at least one court has recognized that "to the extent that a state trial court is prohibited from considering recoupment and damage counterclaims arising from consumer protection statutes such as TILA, those claims cannot be inextricably intertwined with the state court judgment." Randall, 358 B.R. at 162 (citing Long, 182 F.3d at 557-58) (explaining that "an issue cannot be inextricably intertwined with a state court judgment if the plaintiff did not have a reasonable opportunity to raise the issue in state court proceedings").  "In other words, only actions related to the mortgaged property may be pursued in a state foreclosure proceeding.  Actions for money damages against private parties do not find their home in state foreclosure suits."  In re Reagoso, Bankr. No. 06-12961, 2007 WL 1655376, at *2 (E.D. Pa. June 6, 2007).  The underlying reason for this distinction is that a mortgage foreclosure is an action *in rem* with regard to the property, whereas actions for damages are *in personam* in nature.  Id.

Any claim for *rescission* of the mortgage, however, would effectively "undo" the state court's foreclosure judgment and would prevent the state court from enforcing its order.  In her Prayer for Relief, Ms. Hansford seeks "[r]escission of the loan, including a declaration that Plaintiff is not liable for any finance charges or other charges imposed by Defendants."  (Amd. Compl., "Prayer for Relief.")  Implicit in a foreclosure judgment is the court's determination that the mortgage is valid.  Rescission of the mortgage reverses this determination.  See Madera v. Ameriquest Mortgage Company, 388 B.R. 586, 597 (E.D. Pa. 2008) ("A mortgage foreclosure action depends upon the existence of a valid mortgage.  A proper claim that a loan must be rescinded . . . would have the effect of invalidating the mortgage.").  Because any claim for

8

rescission of Ms. Hansford's mortgage is thus "inextricably intertwined" with a prior state court judgment, pursuant to the <u>Rooker-Feldman</u> doctrine, the Court lacks jurisdiction over any claim for rescission.

This conclusion is supported by decisions of courts in this Circuit.  The court of appeals has held that the <u>Rooker-Feldman</u> doctrine bars claims for rescission if such claims would have the effect of undoing a state court foreclosure action.  <u>See, e.g.</u>, <u>Ayres-Fountain v. Eastern Savings Bank</u>, 153 F. App'x 91, 92 (3d Cir. 2005) (holding that court lacked jurisdiction to resolve rescission claim because it was "inextricably intertwined" with state court default judgment in foreclosure); <u>Knapper</u>, 406 F.3d at 580 (holding that <u>Rooker-Feldman</u> doctrine applied to prevent bankruptcy court from exercising subject matter jurisdiction over adversary proceeding brought by Chapter 13 debtor to set aside state foreclosures and sheriff's sales); <u>see also</u> <u>In re Faust</u>, 353 B.R. 94 (E.D. Pa. 2006) (following entry of judgment in lender's favor in state court mortgage foreclosure action, <u>Rooker-Feldman</u> doctrine barred rescission claim, but did not bar action to recoup money damages); <u>Stuart</u>, 367 B.R. at 549-50 (holding that under <u>Rooker-Feldman</u>, bankruptcy court lacked jurisdiction over rescission claim where mortgage was subject to foreclosure judgment in state court); <u>Cooley</u>, 365 B.R. at 470-73 (same); <u>Reagoso</u>, 2007 WL 1655376, at *2-3 (same).

## II.    Claim Preclusion (*Res Judicata*)

The Defendants assert that Ms. Hansford's claims are barred by the doctrine of claim preclusion because Ms. Hansford's Chapter 13 plan, which did not disclose the present claims, was confirmed by the bankruptcy court.

Claim preclusion, or *res judicata*, "prohibits reexamination not only of matters actually

9

decided in the prior case, but also those that the parties might have, but did not assert in that action." Williams v. City of Allentown, 25 F. Supp. 2d 599, 602 (E.D. Pa. 1998) (citing Edmundson v. Borough of Kennett Square, 4 F.3d 186, 189 (3d Cir. 1993)).  In order to successfully invoke claim preclusion, a party must show that "there has been: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action."  United States v. Athlone Industries, Inc., 746 F.2d 977, 983 (3d Cir. 1984).  "All facts, allegations, and legal theories which support a particular claim, as well as all possible remedies and defenses, must be presented in one action or are lost."  Williams, 25 F. Supp. 2d at 602 (citing 18 James Wm. Moore, et al., Moore's Federal Practice § 131.01 (3d ed. 1998)).

The filing of a bankruptcy case creates an estate comprised of all legal and equitable interests of the debtor in any property as of the date of the commencement of the bankruptcy case.  11 U.S.C. § 541.  The debtor must disclose all of her assets to the bankruptcy court, including all "causes of action" that the debtor could have brought at the time of the bankruptcy petition.  In re Ozark Rest. Equip. Co., 816 F.2d 1222, 1225 (8th Cir. 1987).  Any such causes of action are categorized as the debtor's personal property.

A confirmed Chapter 13 plan is final and binding on the debtor and all creditors and carries *res judicata* effect.  New Jersey Dep't of Treasury v. Visara Intern, Inc., 166 F. App'x 639, 641 (3d Cir. 2006) (not precedential) (*res judicata* applied in the bankruptcy context means that a confirmed plan binds every entity that holds a claim or interest and precludes parties from raising claims or issues that could or should have been raised prior to confirmation); In re Szostek, 886 F.2d 1405, 1408 (3d Cir. 1989) ("Under § 1327, a confirmation order is res judicata

10

as to all issues decided or which could have been decided at the hearing on confirmation.").

However, because a bankruptcy case is not a discrete lawsuit, "[c]laim preclusion only bars claims arising from the same cause of action previously raised, not every conceivable claim that could have been brought in the context of a bankruptcy case over which the court would have had jurisdiction." Eastern Minerals & Chemicals Co. v. Mahan, 225 F.3d 330, 337 (3d Cir. 2000). Accordingly, "[c]laim preclusion doctrine must be properly tailored to the unique circumstances that arise when the previous litigation took place in the context of a bankruptcy case." Id. While it may be difficult to define the contours of a cause of action in a bankruptcy setting, "a claim should not be barred unless the factual underpinnings, theory of the case, and relief sought against the parties to the proceeding are so close to a claim actually litigated in the bankruptcy that it would be unreasonable not to have brought them both at the same time in the bankruptcy forum." Id. at 337-38.

Here, the focus is on the third element of claim preclusion. The Court must determine whether Ms. Hansford's claims are based on the same cause of action as any claim actually asserted in Ms. Hansford's bankruptcy. As the court of appeals has emphasized, "claim preclusion does not bar *all* unasserted claims that theoretically could have been raised, but only those based on the same cause of action that was actually asserted previously." Id. at 336. Nothing in the Amended Complaint or the exhibits attached to the Defendants' Motion to Dismiss, which are matters of public record,[2] indicates which, if any, claims were actually

---

[2] To evaluate a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice. See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

asserted in the bankruptcy proceedings.  Therefore, even though Ms. Hansford theoretically *could*

have raised the present claims in the prior proceeding, the Court cannot dismiss Ms. Hansford's

claims on claim preclusion grounds because at this time there is no evidence that the present

claims are based on the same cause of action as claims that were actually asserted in the

bankruptcy case.

## III.      Judicial Estoppel

The Defendants assert in the alternative that the doctrine of judicial estoppel – that is,

preclusion of inconsistent positions – bars Ms. Hansford from asserting the present causes of

action because she failed to disclose them in her bankruptcy schedules and reorganization plan.

The judge-made concept of judicial estoppel "applies to preclude a party from assuming a

position in a legal proceeding inconsistent with one previously asserted." Oneida Motor Freight,

Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir. 1988) (citing Scarano v. Central Railroad

Co., 203 F.2d 510 (3d Cir. 1953)).  "[T]he doctrine's basic principle is that absent a sufficient

explanation, a party should be prohibited from gaining an advantage by litigating on one theory

and then subsequently seeking an additional advantage by pursuing an irreconcilably inconsistent

theory." Ortlieb v. Hudson Bank, 312 F. Supp. 2d 705, 710-711 (E.D. Pa. 2004) (citing Ryan

Operations v. Santiam-Midwest Lumber Co., 81 F.3d 355, 358 (3d Cir. 1996)).  When properly

invoked, judicial estoppel bars a litigant from asserting a position that is inconsistent with one he

or she previously took before a court or agency.  Montrose Medical Group Participating Savings

Plan v. Bulger, 243 F.3d 773, 779 (3d Cir. 2001).

Judicial estoppel is "not intended to eliminate all inconsistencies no matter how slight or

inadvertent they may be." Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.,

337 F.3d 314, 319 (3d Cir. 2003).  Three requirements must be met before a district court may

properly apply judicial estoppel.  First, the party to be estopped must have taken two positions

that are "irreconcilably inconsistent."  Montrose, 243 F.3d at 779 (citing Ryan, 81 F.3d at 361).

Second, judicial estoppel is not warranted unless the party changed his or her position "in bad

faith – i.e., with intent to play fast and loose with the court."  Id. (citing Ryan, 81 F.3d at 361).

Finally, a district court may not employ judicial estoppel unless it is "tailored to address the harm

identified and no lesser sanction would adequately remedy the damage done by the litigant's

misconduct."  Id. at 779-80 (quotation marks and citation omitted).  Furthermore, "equity

requires that the presiding court give the party to be estopped a meaningful opportunity to

provide an explanation for its changed position."  Krystal, 337 F.3d at 320.

        In Krystal, the court of appeals affirmed dismissal of the plaintiff's claims on judicial

estoppel grounds where the plaintiff failed to disclose those claims in its Chapter 11 bankruptcy

disclosure statement and reorganization plan.  The plaintiff undisputably knew about each of the

claims it later brought against the defendant, but did not mention the claims during the

bankruptcy proceedings.  337 F.3d at 320-21.  The court of appeals agreed with the bankruptcy

court that the "boilerplate language" used by the plaintiff in its disclosure statement was "simply

not adequate to provide the level of notice required.  The bankruptcy rules were clearly not

intended to encourage this kind of inadequate and misleading disclosure by creating an escape

hatch debtors can duck into to avoid sanctions for omitting claims once their lack of candor is

discovered."  Id. at 321.  Allowing the debtor to amend its bankruptcy filings only after the

omission is discovered "would only diminish the necessary incentive to provide the Bankruptcy

Court with a truthful disclosure of the debtors' assets."  Id. (quoting Burnes v. Pemco Aeroplex,

Inc., 291 F.3d 1282, 1288 (11th Cir. 2002)).

In contrast, in Ryan, the court of appeals held that a debtor's failure to disclose claims in the prior bankruptcy proceeding did *not* bar the debtor from later pursuing those claims where there was no evidence that the debtor acted in bad faith. 81 F.3d at 362-63. Although it was "undisputed" that by failing to list its claims in its bankruptcy schedules, the debtor/plaintiff violated the statutory duties of full disclosure, the court of appeals held that such nondisclosure does not *necessarily* amount to the assertion of inconsistent positions. Id. at 362 (citing Oneida, 848 F.2d at 419 ("[W]e stop short of finding that . . . [plaintiff's] prior silence is equivalent to an acknowledgment that it did not have a claim against the bank."))[3]

Specifically, in Ryan, the debtor did not treat its claims as undisputed or even mention them at all. Cf. Oneida, 848 F.2d at 419 (debtor failed to disclose potential claim against a bank for $7.7. million as asset, but simultaneously claimed the corresponding $7.7 million debt to the bank as a liability on the same schedule). In Ryan, the court found "no evidence that the nondisclosure played any role in the confirmation of the plan or that disclosure of the potential claims would have led to a different result." Id. Thus, the Ryan debtor had not "deliberately asserted an inconsistent position in order to gain unfair advantage." Id.[4]

As discussed below, the facts presented here are more closely analogous to those in Ryan than those in Krystal or Oneida. In particular, there is no evidence that Ms. Hansford intended to

---

[3] Accordingly, the cases from other jurisdictions upon which the Defendants rely for the proposition that "a debtor's failure to list a claim in the 'mandatory bankruptcy filings is tantamount to a representation that no such claim existed'" are inapposite.

[4] The court of appeals acknowledged, however, that "it may generally be reasonable to assume that a debtor who fails to disclose a substantial asset in bankruptcy proceedings gains an advantage." Id. The facts of each case determine whether such an inference is appropriate. Id.

14

gain an unfair advantage or otherwise acted in bad faith.  The Court concludes that judicial estoppel does not bar Ms. Hansford's claims.

### A.   Inconsistent Positions

Judicial estoppel may apply where the party to be estopped has taken two positions that are "irreconcilably inconsistent." Montrose, 243 F.3d at 779 (citing Ryan, 81 F.3d at 361).  Here, it is indisputable, if not undisputed, that Ms. Hansford asserted positions that are "irreconcilably inconsistent."

First, in her bankruptcy proceedings, Ms. Hansford did not disclose the claims asserted in the present suit, even though the events giving rise to those claims had already occurred.  The mortgage was executed in June 2003; the foreclosure action was filed on October 11, 2005; judgment by default was entered on November 22, 2005; and the sheriff's sale was scheduled for June 2006.  Ms. Hansford filed a voluntary petition for Chapter 13 bankruptcy on October 19, 2006, in which Ms. Hansford admitted default on the mortgage.  The Bankruptcy Court confirmed Ms. Hansford's Plan by order of April 27, 2007.  Thus, at the time Ms. Hansford prepared her Chapter 13 Petition, she was aware of most, if not all, of the claims presented here, and certainly was aware of all of the claims at the time the Bankruptcy Court confirmed the Plan in April 2007.

Second, although Ms. Hansford previously admitted her default on the mortgage, in this Court she proceeded to challenge its validity based on the Defendants' alleged unlawful actions with respect to the origination and servicing of the mortgage.

These two positions are at least facially inconsistent, and Ms. Hansford misled the Bankruptcy Court by failing to disclose the present causes of action in her Schedule of Assets.

15

However, as discussed below, the other two prongs required for application of judicial estoppel are not met here because there is no evidence that Ms. Hansford acted in bad faith, or that the harsh sanction of barring her claims is appropriate.

### B.    Bad Faith

Inconsistencies are not sanctionable unless a litigant has taken one or both positions "in bad faith – i.e., with intent to play fast and loose with the court."  Krystal, 337 F. at 319 (quoting Ryan, 81 F.3d at 361).  A finding of bad faith must be based on more than the existence of an inconsistency.  Klein v. Stahl GMBH & Co. Maschinefabrik, 185 F.3d 98, 111 (3d Cir. 1999). Indeed, a litigant has not acted in "bad faith" for judicial estoppel purposes unless two requirements are met.

First, he or she must have behaved in a manner that is somehow culpable.  Montrose, 243 F.3d at 781; Ryan, 81 F.3d at 362 (stating that judicial estoppel may not be employed unless "'intentional self contradiction is . . . used as a means of obtaining *unfair* advantage'" (quoting Scarano, 203 F.2d at 513) (emphasis added)).

Second, a litigant may not be estopped unless he or she has engaged in culpable behavior vis-à-vis *the court* because, as our court of appeals has emphasized, judicial estoppel is concerned with the relationship between litigants and the legal system, and not with the way that adversaries treat each other.  See, e.g., Ryan, 81 F.3d at 360 ("Judicial estoppel 'is intended to protect the courts rather than the litigants.'") (quoting Fleck v. KDI Sylvan Pools, Inc., 981 F.2d 107, 121-22 (3d Cir. 1992)).  Accordingly, judicial estoppel "may not be employed unless a litigant's culpable conduct has assaulted the dignity or authority of the court."  Montrose, 243

16

F.3d at 781.[5]

"[A] rebuttable inference of bad faith arises when averments in the pleadings demonstrate both knowledge of a claim and a motive to conceal that claim in the face of an affirmative duty to disclose." Krystal, 337 F.3d at 321 (citing Oneida, 848 F.2d at 416-18).  However, the court of appeals specifically declined to hold that nondisclosure alone is sufficient.  As that court explained,

> policy considerations militate against adopting a rule that the requisite
> intent for judicial estoppel can be inferred from the mere fact of
> nondisclosure in a bankruptcy proceeding.  Such a rule would unduly
> expand the reach of judicial estoppel in post-bankruptcy proceedings
> and would inevitably result in the preclusion of viable claims on the
> basis of inadvertent or good-faith inconsistencies.

Ryan, 81 F.3d at 364.

Under facts alleged in the Amended Complaint here, at the time of her bankruptcy filings, Ms. Hansford was aware of the injuries giving rise to her claims and she was required to disclose any such claims in her bankruptcy filings.  See 11 U.S.C. § 541(a)(1) (Chapter 13 bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement

---

[5] Judicial estoppel likewise does not apply unless the party's initial position was accepted or adopted by a court or agency.  Id.  So long as the initial claim was in some way accepted or adopted, no further showing is necessary that the party "benefitted" in any particular way.  See, e.g., Anjelino v. New York Times Co., 200 F.3d 73, 100 (3d Cir. 1999) (upholding a district court's use of judicial estoppel where a litigant sought to withdraw its previous representation to the court that no further discovery was needed).

Similarly, because the doctrine aims to protect the court's interest, rather than any individual party's, it is not necessary that the two proceedings in which the inconsistent statement were made be related, or that the party against whom the inconsistent pleading is being used be specifically prejudiced by the inconsistency.  This is what separates judicial estoppel from the related concept of equitable estoppel, where a party is precluded from advancing a particular position because of its adversary's detrimental reliance on an earlier inconsistent statement.  Any reliance or prejudice suffered by the other party as a result of the inconsistent positions is immaterial to the application of judicial estoppel.  Oneida, 848 F.2d at 419.

of the [bankruptcy] case"); 11 U.S.C. § 521(1) (debtor is required to "file a . . . schedule of assets and liabilities . . . and a statement of the debtor's financial affairs").  However, it is not clear that Ms. Hansford necessarily had a strong motive to conceal these claims.  Unlike Chapter 11 bankruptcy, where minimizing the debtor's current assets would encourage creditors to approve reorganization on terms more favorable to the debtor, see Krystal, 337 F.3d at 323-24, under Chapter 13 bankruptcy, a debtor must pay creditors from her earned income – not her *assets* – as outlined in her Plan.  At least one other Court has recognized this distinction.  See EEOC v. Apria Healthcare Group, Inc., 222 F.R.D. 608, 613 n.3 (E.D. Mo. 2004) ("This Court is not convinced that a Chapter 13 debtor-in-possession has a motive to secrete assets, given that the creditors are repaid out of the debtor's income.").  Moreover, even in cases involving Chapter 11 bankruptcy proceedings, the Third Circuit Court of Appeals has held that a party's failure to disclose a potential claim to the bankruptcy court is not a *per se* inconsistency.  Oneida, 848 F.2d at 417.

In sum, although Ms. Hansford's positions may be inconsistent, there is no evidence of a strong motive to conceal her claims, bad faith or culpable behavior.  In addition, it appears that a different attorney from her present counsel represented Ms. Hansford in the bankruptcy proceedings.  And, finally, Ms. Hansford has since filed an Amended Schedule B disclosing these claims to the Bankruptcy Court.  (See Def. Mot. ¶ 15 n.2.)  Judicial estoppel is not warranted under these circumstances.

## C.      Appropriateness of the Sanction

A district court may not employ judicial estoppel unless it is "tailored to address the harm identified and no lesser sanction would adequately remedy the damage done by the litigant's

misconduct." <u>Montrose</u>, 243 F.3d at 779-80 (internal quotation marks and citation omitted).

Although seemingly broad, judicial estoppel is not intended to eliminate any slight or inadvertent

inconsistency in a litigant's position; instead it is reserved for only the most egregious cases.

<u>Krystal</u>, 337 F.3d at 319.

 As an "'extraordinary remedy,'" judicial estoppel should be employed only "'when a

party's inconsistent behavior would otherwise result in a miscarriage of justice.'" <u>Montrose</u>, 243

F.3d at 784 (<u>quoting</u> <u>Ryan</u>, 81 F.3d at 365). Because judicial estoppel "is often the harshest

remedy that a court can impose for inequitable conduct," the Third Circuit Court of Appeals has

held that a district court may not invoke the doctrine unless: (1) "no sanction established by the

Federal Rules or a pertinent statute is up to the task of remedying the damage done by a litigant's

malfeasance;" and (2) "the sanction [of judicial estoppel] is tailored to address the harm

identified." <u>Id.</u> (internal quotation marks and citations omitted).

 In <u>Montrose</u>, the court of appeals held that the district court abused its discretion in

applying judicial estoppel because the remedy was not tailored to address an affront to the court's

integrity and because its use would create rather than defeat a miscarriage of justice. <u>See also</u>

<u>Ryan</u>, 81 F.3d at 362-65 (rejecting application of judicial estoppel based on lack of evidence of

plaintiff's bad faith in failing to disclose contingent claims in prior bankruptcy proceeding). <u>But</u>

<u>see</u> <u>Krystal</u>, 337 F.3d at 319-25 (applying judicial estoppel to bar debtor plaintiff's claim against

defendant creditor for violation of the automatic stay imposed by the Bankruptcy Code because

plaintiff knew about the claim during the prior bankruptcy proceeding and had a motive to

conceal it in the face of an affirmative duty to disclose); <u>Oneida</u>, 848 F.2d at 419-420 (invoking

judicial estoppel against debtor plaintiff to bar claims against defendant creditor because plaintiff

19

failed to disclose those claims in bankruptcy proceedings despite citing defendant's improper activities as the catalyst for its bankruptcy filing).

Here, as in <u>Oneida</u>, Ms. Hansford cites the Defendants' alleged improper activities as the reason for her bankruptcy – but then failed to disclose her corresponding causes of action. However, as previously discussed, there is nothing to indicate that Ms. Hansford deliberately manipulated the system in an attempt to gain an unfair advantage.  Given the harsh effect of judicial estoppel, it is not an appropriate remedy under the circumstances presented here.

## IV.    Failure to State a Claim

The Defendants alternately move to dismiss Ms. Hansford's claims on the grounds that the allegations in the Amended Complaint are insufficient to state a claim and/or are time-barred. The Court will address each of Ms. Hansford's thirteen claims in turn.

### A.    Count I: Fair Credit Reporting Act

Count I alleges that the Defendants unlawfully accessed Ms. Hansford's credit information and/or furnished inaccurate information to credit reporting agencies in violation of the FCRA.  (Amd. Compl. ¶ 39.)  According to Ms. Hansford, the Defendants are liable for providing inaccurate information because they erroneously informed credit reporting agencies that Ms. Hansford continued to be in default, that she continued to be in foreclosure, and that her property was subject to sale.  (Pl. Response 13.)  However, this claim fails because, in fact the accuracy of the offending statements is actually undisputed: Ms. Hansford admits that she defaulted on her mortgage (Amd. Compl. ¶ 15), that the Defendants filed a complaint in foreclosure (<u>id.</u> at ¶ 14), and that her property was subject to a sheriff's sale (<u>id.</u> at ¶¶ 30-33). The alleged unlawful actions that purportedly caused these events does not change the fact that

they occurred.  Thus, Ms. Hansford's FCRA claim will be dismissed for failure to state a claim.[6]

**B.    Count II: Fraud**

The Defendants assert that the fraud claim fails because Ms. Hansford cannot establish the element of damages.  The Court disagrees.  Ms. Hansford alleges that the Defendants misrepresented and/or omitted material facts upon which Ms. Hansford relied to her detriment, including (a) that the loan was beneficial to Ms. Hansford; (b) that the fees were usual and customary; (c) that the fees were a part of the finance charge and/or amount financed; (d) that the loans were conventional and fixed; (e) that certain amounts were due and owing when they were not; (e) that the forbearance agreement would be honored; and/or (f) that the foreclosure would be stopped.  (Id. at ¶¶ 41-43.)  Allegedly as a result of these misrepresentations and omissions, Ms. Hansford almost lost her house and filed for bankruptcy.  These allegations suffice to state a claim for fraud.

The Defendants also assert that Ms. Hansford's fraud claim is barred by the applicable statute of limitations.  In Pennsylvania, fraud claims are governed by a two-year statute of limitations.  42 Pa. C.S.A. § 5524(7).

Although Rule 12(b) does not explicitly permit the assertion of a statute of limitations defense via a motion to dismiss, our court of appeals permits a defendant to assert a limitations defense in a Rule 12(b)(6) motion "if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"  Zankel v. Temple University, 245 F. App'x 196, 198 (3d Cir. 2007) (quoting Robinson v. Johnson, 313 F.3d 128,

---

[6] Accordingly, the Court need not consider the Defendants' statute of limitations challenge to this claim.

135 (3d Cir. 2002)).  Thus, "[g]ranting a Rule 12(b)(6) motion based on statute of limitations

grounds is proper if the complaint facially shows noncompliance with the limitations period."

<u>Caleb v. CRST, Inc.</u>, 43 F. App'x 513, 515 (3d Cir. 2002) (<u>quoting</u> <u>Bethel v. Jendoco Constr.</u>

<u>Corp.</u>, 570 F.2d 1168, 1174 (3d Cir.1978)).  However, if a limitations "bar is not apparent on the

face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule

12(b)(6)."  <u>Id.</u> (quoting <u>Bethel</u>, 570 F.2d at 1174).

   Here, Ms. Hansford's fraud claim is not necessarily time-barred.  Ms. Hansford was

served with the foreclosure action on October 19, 2005 (<u>see</u> Def. Mot., Ex. B), but she did not

receive notice of the sheriff's sale until June 2006 (Amd. Compl. ¶ 30).  The present action was

commenced on November 8, 2007.  The key event appears to be the sheriff's sale because that is

the point when Ms. Hansford reasonably should have known that the Defendants did not intend

to honor the alleged forbearance agreements.  Thus, it is not clear from the face of the Amended

Complaint that Ms. Hansford's fraud claim is time-barred and the Court will not preclude it at

this time.

### C.  Count III: Breach of Contract

  Count III alleges that the Defendants breached their contract with Ms. Hansford.  (Amd.

Compl. ¶ 45.)  Ms. Hansford and the Defendants allegedly "were parties to an express contract(s)

and/or contract(s) and/or warranties implied at law, which includes but is not limited to

Defendants' [sic] as third-party beneficiaries, which Defendants are in breach thereof."  (<u>Id.</u>)

  The Defendants assert that this claim must be dismissed because the alleged forbearance

agreements were not in writing.  The Court agrees.  The Pennsylvania Superior Court recently

confirmed that "[a]n agreement to forbear from foreclosure between mortgagor and mortgagee,

has been held to represent an interest in land such that the agreement is subject to the Statute of Frauds and must be in writing." Strausser v. PRAMCO, III, 944 A.2d 761, 765 (Pa. Super. 2008) (citing Atlantic Fin. Fed. v. Orianna Historic Associates, 594 A.2d 356 (Pa. Super. 1991)).  Thus, Ms. Hansford's breach of contract claim fails because the alleged forbearance agreements admittedly were not in writing.

Part performance does not take an agreement out of the statute of frauds. Id. at 766-77. Thus, the fact that Ms. Hansford allegedly made the agreed upon payments, and the Defendants allegedly accepted those payments, does not waive the requirement that the agreement be writing. Moreover, neither equitable nor promissory estoppel applies where the forbearance agreement was not in writing. Id. at 767 (citing Borrello v. Lauletta, 317 A.2d 254 (Pa. 1974); Target Sportswear, Inc. v. Clearfield Foundation, 474 A.2d 1142 (Pa. Super. 1984)).  "[T]he doctrine of estoppel simply cannot be invoked against the operation of the Statue of Frauds." Id. at 767. Accordingly, because there is no allegation or indication that the alleged forbearance agreements were in writing, the Court must dismiss Ms. Hansford's breach of contract claim.

### D.    Count IV: Fair Credit Extension Uniformity Act

Count IV alleges violations of the Fair Credit Extension Uniformity Act, 73 Pa. C.S. § 2270.1, *et seq.*  Ms. Hansford has voluntarily withdrawn this claim.  (Pl. Response 8.)

### E.    Count V: UTPCPL

Ms. Hansford asserts that the actions of the Defendants constitute unfair or deceptive acts and practices under the UTPCPL.  (Amd. Compl. ¶ 49.)

Section 201-3 of the UTPCPL provides that it is unlawful to engage in "unfair or deceptive acts or practices in the conduct of any trade or commerce" as defined by section 201-

2(i)-(xxi).  In addition to 20 specifically enumerated practices, the UTPCPL provides that

"engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion

or of misunderstanding" constitutes an "unfair or deceptive act or practice."  73 P.S. § 201-

2(4)(xxi); Toy v. Metropolitan Life Ins. Co., 928 A.2d 186, 190 n.4  (Pa. 2007).

 The requirements for pleading fraudulent and deceptive practices under this "catchall"

provision are "in flux" in Pennsylvania state and federal courts.  Chiles v. Ameriquest Mortg.

Co., 551 F. Supp. 2d 393, 398 (E.D. Pa. 2008) (citations omitted).  Because the UTPCPL must

be construed liberally, Keller v. Volkswagen of Am., Inc., 733 A.2d 642, 646 (Pa. Super. 1999),

the Court will join other courts in this district to permit a plaintiff who alleges deceptive conduct

to proceed without proving all of the elements of common law fraud.  See, e.g., Chiles, 551 F.

Supp. 2d at 398; Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427 (E.D. Pa. 2002), In re

Crisomia v. Parkway Mortgage Co., 286 B.R. 604 (Bankr. E.D. Pa. 2002); Patterson v. Chrysler

Fin. Co., 263 B.R. 82 (Bankr. E.D. Pa. 2001); Rodriguez v. Mellon Bank, 218 B.R. 764 (Bankr.

E.D. Pa. 1998).[7]  Under this view, a plaintiff alleging deceptive practices need only allege

deceptive conduct and an ascertainable loss.  See Flores, 246 F. Supp. 2d at 432; Commonwealth

of Pa. v. Percudani, 825 A.2d 743, 746-47 (Pa. Commw. 2003).

 Here, Ms. Hansford has alleged deceptive conduct in connection with the alleged

forbearance agreements and foreclosure proceedings, and she has alleged an ascertainable loss

resulting from the Defendants' alleged actions.  These allegations suffice to state a claim for

---

 [7] The Pennsylvania Supreme Court has not yet addressed this issue.  Most recently, the
Pennsylvania Supreme Court held that a claim of *fraud* under the UTPCPL's catchall provision
requires proof of all of the elements of common law fraud, including justifiable reliance.  Toy,
928 A.2d at 201-03.  However, the Supreme Court explicitly declined to address whether its
holding applied to claims of *deceptive*, rather than *fraudulent*, practices.  Id. at 203 n.20.

deceptive acts under the UTPCPL.  Moreover, as previously discussed, Ms. Hansford has sufficiently pleaded the elements of common law fraud.  Accordingly, the allegations also suffice to state a claim for fraudulent acts under the UTPCPL.

**F.      Count VI: Negligence**

Count VI alleges that the Defendants acted negligently.  (Amd. Compl. ¶ 51.)  To establish a cause of action for negligence, the plaintiff must show "that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage."  Martin v. Evans, 711 A.2d 458, 461 (Pa. 1998) (citations omitted).

Here, there are no allegations that the Defendants acted without the ordinary care that a reasonably prudent person would exercise in the same or similar circumstances.  Id. (citations omitted).  Rather, the Amended Complaint alleges that Ms. Hansford's damages are the result of deliberate and intentional conduct on the part of the Defendants.  As pleaded here, the negligence claim is purely speculative and thus must be dismissed.[8]

**G.      Count VII: Breach of Fiduciary Duty**

Count VII alleges that the Defendants breached fiduciary duties owed to Ms. Hansford. (Amd. Compl. ¶ 53.)  Nothing in the Amended Complaint or Ms. Hansford's response indicates the existence of a fiduciary relationship or trust between the Defendants and Ms. Hansford.  No fiduciary relationship is created merely by the execution of a mortgage.  See Buchanan v. Century Federal Sav. and Loan Ass'n, 542 A.2d 117, 121 (Pa. Super. 1988) (citing Restatement

---

[8] Because the Court concludes that Ms. Hansford has failed to state a claim for negligence, the Court will not reach the Defendants' statute of limitations argument.

(Second) of Trusts § 12, comment g).  There are simply no factual allegations to support this claim.  Accordingly, it will be dismissed.

### H.    Count VIII: Conspiracy and Aiding and Abetting

Ms. Hansford also alleges that the Defendants conspired and/or aided and abetted each other to perpetrate the alleged harm and misconduct.  (Amd. Compl. ¶ 55.)  To state a claim for conspiracy, a plaintiff must allege facts that directly demonstrate or support an inference that (1) two or more people acted with the common purpose to do either an unlawful act or a lawful act by unlawful means; (2) an overt act was done in pursuance of the common purpose; (3) the people acted with malice; and (4) actual legal damages resulted.  Goldstein v. Phillip Morris, Inc., 854 A.2d 585, 590 (Pa. Super. 2004).  The tort of aiding and abetting requires similar proof of "acts of a tortious character pursuant to a common design or plan," or the rendering of "substantial assistance to another to accomplish a tortious act."  Koken v. Steinberg, 825 A.2d 723, 732 (Pa. Cmwlth. 2003) (quoting Cummins v. Firestone Tire & Rubber Co., 495 A.2d 963, 969 (1985)).

The allegations in the Amended Complaint suffice to establish the essential elements of both of these claims.  In particular, Ms. Hansford has alleged that the Defendants acted with malice and with an intent to defraud her in connection with the alleged forbearance agreements and the sheriff's sale.  (See Amd. Compl. ¶¶ 21, 23, 25, 31, 34.)  The allegations also suffice to reasonably infer that the Defendants acted in concert.  These claims may proceed.

### I.    Counts IX and X: Abuse of Process and Wrongful Use of Process

Counts IX and X allege that the Defendants committed acts amounting to abuse of process and wrongful use of process.  (Amd. Compl. ¶¶ 57-65.)

"Abuse of process" is defined as "the use of legal process against another primarily to accomplish a purpose for which it is not designed." Werner v. Plater-Zyberk, 799 A.2d 776, 785 (Pa. Super. 2002) (citations omitted).  To establish a claim for abuse of process it must be shown that the defendant (1) used a legal process against the plaintiff, (2) primarily to accomplish a purpose for which the process was not designed, (3) resulting in harm to the plaintiff.  Id.  In essence, abuse of process is "the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process."  Id. (citing McGee v. Feege, 535 A.2d 1020, 1026 (Pa. 1987)).

To establish *wrongful use of process*, a plaintiff must show that the defendant did not have probable cause to bring the action in question.  A person has probable cause to bring an action if he or she "reasonably believes in the existence of the facts upon which the claim is based," and either (1) reasonably believes that under those facts the claim may be valid, (2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts, or (3) believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.  42 Pa. C.S.A. § 8352; Kit v. Mitchell, 771 A.2d 814, 821 (Pa. Super. 2001) (citations omitted).

Here, both claims must fail because Ms. Hansford admitted that her loan was in default, and the foreclosure action did not terminate in her favor.  (Amd. Compl. ¶ 15; Def. Mot., Exs. C and D.)  Accordingly, it cannot be said that the foreclosure action was brought for a purpose other than for which the procedure was designed, or that the Defendants did not have probable cause to institute the action.  Notwithstanding the alleged misconduct on the part of the

Defendants with respect to the alleged forbearance agreements, these claims must be dismissed.

**J.      Count XI: Fraud on the Court**

In Count XI, Ms. Hansford alleges that the Defendants committed fraud on the court because they instituted the "underlying action" (presumably, the foreclosure action, although not defined in the Amended Complaint) without probable cause and for the purpose of defrauding the court.  (Amd. Compl. ¶ 67-68.)  This claim fails because, as previously discussed, Ms. Hansford admitted her default and did not contest the foreclosure action.  Therefore, she cannot prove that the Defendants acted wrongfully or fraudulently in pursuing foreclosure.[9]

**K.      Count XII: Section 1983**

In Count XII, Ms. Hansford alleges that the Defendants, by making use of the Philadelphia County prothonotary, sheriff and Court of Common Pleas, violated Ms. Hansford's civil rights.  (Amd. Compl. ¶¶ 70-72.)  The Defendants assert that this claim should be dismissed because the Defendants are not state actors and because Ms. Hansford admitted her default.  In addition, argue the Defendants, because the bankruptcy stayed the sheriff's sale, Ms. Hansford ultimately was not deprived of her property.

To state a Section 1983 claim based on the Due Process Clause of the Fourteenth Amendment, a plaintiff must allege deprivation of a property interest under color of state law without due process.  Dykes v. Southeastern Pa. Transp. Auth., 68 F.3d 1564, 1570 (3d Cir. 1995).  "Due process" generally requires notice and an opportunity to be heard.  United States v. James Daniel Good Real Prop., 510 U.S. 43, 48 (1993).  Here, even assuming the Defendants

---

[9] The Court will not reach the Defendants' statute of limitations argument.

may be considered state actors and Ms. Hansford was indeed deprived of her property during the course of the foreclosure proceedings, the Section 1983 claim nonetheless fails because the facts do not support a due process violation.  There is no allegation that Ms. Hansford did not receive prior notice of the foreclosure action or sheriff's sale.  Indeed, the Amended Complaint indicates that she received multiple notices of the sale (Amd. Compl. ¶¶ 30, 32), and the foreclosure complaint was properly served (Def. Mot., Ex. B).  Furthermore, the foreclosure action provided a forum in which Ms. Hansford could contest the foreclosure and sheriff's sale.  Accordingly, because there was no due process violation, Ms. Hansford's Section 1983 claim will be dismissed.

###### L.       Count XIII: Punitive Damages

Lastly, Ms. Hansford asserts a separate claim for punitive damages, which she has voluntarily withdrawn.  (Pl. Response 8.)

### IV.    Claims Against Bank of America

While the overarching issues here relate to the prior foreclosure action and bankruptcy proceedings, the Defendants assert that all claims against Bank of America must be dismissed because Bank of America is not the current owner or servicer of the mortgage in question. According to the Defendants, after execution, the mortgage was immediately assigned to Government National Mortgage Association and Bank of America had no involvement in either the foreclosure action or the bankruptcy action.  Ms. Hansford responds that there is no record of any assignment of the mortgage, and even if the mortgage was assigned, Bank of America may still be liable for fraud and conspiracy and/or aiding and abetting.

At this early stage of the proceedings, because assignment of the mortgage is contested, the Court cannot dismiss Bank of America.[10]

**CONCLUSION**

Pursuant to the <u>Rooker-Feldman</u> doctrine, the Court does not have jurisdiction over any claims for rescission or invalidation of the mortgage.  Any claim for rescission (or any other relief that would invalidate the mortgage) is barred by <u>Rooker-Feldman</u> because any such relief would have the effect of reversing the state foreclosure action.  However, Ms. Hansford may proceed with any claims for *damages* – so long as these claims otherwise survive the Motion to Dismiss.  Judicial estoppel does not bar these claims.

The allegations in the Amended Complaint suffice to state a claim for fraud, violation of the UPTCPL, conspiracy and aiding and abetting.  The remainder of Ms. Hansford's claims are dismissed for failure to state a claim.  An order consistent with this Memorandum follows.

BY THE COURT:

<u>S/Gene E.K. Pratter</u>
GENE E.K. PRATTER
United States District Judge

---

[10] This factual disputes renders the Defendants' argument concerning the Federal Trade Commission "Holder Rule" (<u>see</u> Def. Reply 5-6) inapposite at this time.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


| | | |
|---|---|---|
| **LILIAN HANSFORD,** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **BANK OF AMERICA, ET AL.,** | : | |
| **Defendants** | : | **NO. 07-4716** |

**<u>ORDER</u>**

AND NOW, this 22nd day of August, 2008, upon consideration of Defendants' Motion to

Dismiss the First Amended Complaint (Docket Nos. 54 and 55), Plaintiff's response thereto

(Docket No. 58) and Defendants' reply (Docket No. 63), it is hereby ORDERED that the Motion

is GRANTED IN PART AND DENIED IN PART as follows:

1. The Motion is GRANTED as to the following claims: Fair Credit Reporting Act

   (Count I); breach of contract (Count III); negligence (Count VI); breach of

   fiduciary duty (Count VII); abuse of process (Count IX); wrongful use of process

   (Count X); fraud on the court (Count XI); and Section 1983 (Count XII).  These

   claims are DISMISSED.

2. The Motion is DENIED as to the following claims: fraud (Count II); violation of

   the UTPCPL (Count V); and conspiracy and aiding and abetting (Count VIII).

IT IS FURTHER ORDERED that the Motion is MOOT as to any claims for rescission of

the mortgage, the Fair Credit Extension Uniformity Act claim (Count IV), and the separate claim

for punitive damages (Count XIII), as Plaintiff has voluntarily withdrawn these claims.

IT IS FURTHER ORDERED that the Defendants' answer to the Amended Complaint is due within 20 days of the date of entry of this Order.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge